We'll move on to the next case, the Secretary of Labor versus Robert Preston. Mr. Silverman is here for the Department of Labor. Mr. Flint for the athletes. Mr. Silverman, when you're all there at the council table, you may begin. May it please the court, Steven Silverman for the secretary. We asked this court to hold that the six-year limit in section 413.1 of ERISA is subject to express waiver. In Pew, the court held that in order to determine whether a federal statutory limitation period is waivable, one must determine if the provision is jurisdictional. Those are bankruptcy cases. Why aren't bankruptcy cases different? Well, if you look at Pew's analysis at the outset, Pew sets an analytical framework for determining whether federal statutory limitations periods are waivable or not. And Pew itself relies on non-bankruptcy cases, one from the Antitrust Act, one from the Interstate Commerce Act, in reaching its analysis. Pew has also been cited by this court subsequently in non-bankruptcy decisions, one involving the IRS, for example. So Pew, in its analysis and in its application of its analysis, does not limit itself to the bankruptcy context. Over the last decade or so, the Supreme Court has repeatedly explained that federal statutory provisions are presumptively non-jurisdictional. Characterizing a rule as jurisdictional renders it unique in our adversarial system. Can I ask you a quick question just about the sort of the appropriate categorical distinction we're trying to make here? You're obviously pushing very hard this jurisdictional, non-jurisdictional distinction. But couldn't a statute be non-jurisdictional, but nonetheless, or a protection be non-jurisdictional, but nonetheless non-waivable for some other reason? Yes, Your Honor, a provision, a statutory provision could be non-jurisdictional and it could be non-waivable, for example. But in that instance, to reach that conclusion, the court would have to overcome a series of presumptions in favor of waivability. So for starters, the Supreme Court has held repeatedly in New York v. Hill and the Mazzanato case that federal statutory rights are presumptively waivable unless there's an affirmative indication by Congress that they are not. And in the Hill and Mazzanato cases, there are examples of, and there's a criminal cases of items that case things that are not waivable. And going back to the 1800s in the Mid-States case, the court said, though it wasn't a jurisdictional analysis, that the statutory provision was not waivable because it undercut the very structure of the statute, which required a short timeline for pricing disputes under shipping. So we have that starting presumption fairly strong, and then we also have the statements from the Supreme Court decision in Holland, as well as in John R. Sand, that non-jurisdictional statutes are presumptively non-waivable as well. And that's in order to make a provision jurisdictional, as I say, Congress must make a clear statement to that effect. And that's the Supreme Court has described as a high bar for litigants to clear. And so defendants are seeking a rather extraordinary ruling from this court that Section 413.1 is a rare instance where Congress has intended to make a time bar jurisdictional. And to go to your point, Judge Newsom, it would also be the rare instance where Congress has made an affirmative statement, a clear indication that the statutory provision is not waivable. As I noted, the Supreme Court has made clear that statutory rights, even constitutional rights, that are very inherently waivable, unless there's, again, a congressional intent to the contrary or something that's inherently contrary to public policy, which we don't have here. Do you, just very briefly, sort of housekeeping, does the government concede that this statute is indeed a statute of repose as opposed to a statute of limitations, or is that still in debate? Yes, Your Honor, the government acknowledges that the language in ANZ that there is a statute of repose. And so, but under Pew, that's not the controlling conclusion. The controlling analysis asks whether it's jurisdictional or not. The reason I asked, and maybe I'll ask the other side this as well, is that is it typical of statutes of repose to have a fraudulent concealment exception built into them? Is that typical? I mean, you see that a lot in statutes of limitation. There's always a fraudulent concealment exception. But I wasn't aware if there is typically a fraudulent concealment exception to a statute of repose. I don't think it's uncommon, Your Honor, but I should say that as this Court recognized in the Moore decision, statutes of repose on the whole are not common, okay? And this is a relatively new area of law where there's no universal principle. There's no settled, static precedent. And so, against that backdrop, we look to those general statutory principles of, you know, the ability to waive statutory rights and the Supreme Court precedent interpreting waiver as well. So, as to your point, they do occur, but it's not common, and the statutes of repose themselves are not common. In turning back to the jurisdictional analysis, the Section 413 neither speaks in jurisdictional terms nor refers in any way to the jurisdiction of the Court. Section 413.1 may speak in mandatory terms, but as the Supreme Court has repeatedly stated, that is how limitation periods are written. In our bar, the Court rejected the notion that mandatory prescriptions, however emphatic, are typed jurisdictional. Section 413.1 stands in sharp contrast to the language that this Court highlighted in Santiago Lugo in providing, excuse me, as providing a jurisdictional bar when it looked at a federal habeas corpus statute, and it said no court, justice, or judge shall have jurisdiction over such matter. The text of 413.1 lacks such a clear statement of congressional intent. In addition to the text, the Supreme Court would say to look to the provision's location, context, and the history for evidence of congressional intent to render 413.1 jurisdictional. Section 413.1 is located in a part of the statute, Part 4, that contains the substantive fiduciary standards under ERISA rather than a part of a statute, Part 5, that describes the Court's jurisdiction. The context of the provision likewise supports it being non-jurisdictional because it lies alongside the fraud or concealment provision that you referenced, Judge Newsom. As the Supreme Court said in Reed L. Sevier, it would be at least unusual to ascribe jurisdictional significance to a provision that was subject to those types of exceptions. Finally, the limited legislative history of 413.1 indicates that Congress intended to remove jurisdictional hurdles for litigants trying to protect their retirement assets. The absence... Let me ask you this question. A few minutes ago, you conceded that this is a statute of repose? Yes, Your Honor. And do you also concede that the statutes of repose are not waivable? No, Your Honor. Or are waivable? I'm sure you'd be happy to concede that. I'm not conceding that statutes of repose are not waivable. Because the government's position is it doesn't really matter whether it's a statute of repose or a statute of limitation, right? We look to the analysis to determine whether or not the statute is jurisdictional. Is that the bottom line? That is the bottom line, Your Honor. That's the way we do it in the Eleventh Circuit. That's the way this Court has ruled in Peugh and in the subsequent en banc, trusted in that media decision that reaffirmed Peugh and held that... The government's position is it doesn't matter whether it's a statute of repose or a statute of limitations in the Eleventh Circuit, right? That's correct, Your Honor. As to the question whether 413.1 is subject to a press waiver. That's correct, Your Honor. But then why do you say that Congress did not intend to set a jurisdictional time bar of six years? It didn't do that? It did not do that, Your Honor. It did not do that at all? That came from nowhere? Well, the jurisdictional time bar, again, Your Honor, as I laid out, the jurisdictional analysis first looked to the text and put a clear statement. What was the congressional intent? Congressional intent is first analyzed under Supreme Court precedent by looking at the statutory text. The text speaks in no way to the jurisdiction of the Court. Second, jurisdictional analysis looked to a location of the provision. So the number of years don't matter, though, right? There was no intent by Congress to do that. There was no intent by Congress to affect the jurisdiction of the Court. So what was the intent? To do what? To provide an ordinary limitations period, a statute of repose, if we acknowledge that. Not a statute of limitations. Well, just to be clear, Your Honor, there's no actual expression of intent. If you look at the legislative history to create a statute of repose, the statute of repose. But you've conceded that it's a statute of repose, so we don't have to analyze that anymore. That's correct. And so the intent, if anything, would have been perhaps, as we look at Supreme Court precedent, ANZ, CTS, perhaps to limit the availability of equitable tolling. Equitable tolling doctrines obviously are perhaps in tension with Congress's, if I can finish answering the question, with Congress's providing for a statute of repose. Because equitable tolling provides, is a, quote, unilateral extension of Congress's time period, which is fundamentally different from a type of express waiver that we have in this case. So is my understanding incorrect that statutes of repose are not waivable? Set aside the way we've evaluated these questions in the 11th Circuit. Aren't statutes of repose not waivable? That is incorrect, Your Honor. As this court held last week in the Burlington case that described a Georgia statute of repose, that it was subject to an extension under a tolling agreement. And again, there's nothing in the Supreme Court authority under ANZ or CTS that addresses the category of waiver as opposed to equitable tolling. And that having not been addressed, we fall back on a long line of Supreme Court cases saying that statutory rights may be waived. And ANZ and CTS did not surreptitiously overrule that line, long line of precedent. All right. We have your argument, Mr. Silverman. We'll hear what Mr. Flint has to say about that. Good morning, Your Honor. Morning. I have with me my partners, Mike Flint, who's my son, and Andrew LaVoy. And we represent Mr. Preston. Just to give you a little background, which you may not need, but could be helpful. On December 30, 2014, the Secretary of Labor filed suit against Robert Preston, alleging violations of the Employment Retirement Income Security Act, which we all call ERISA, and alleging various transactions dating back to 2004 violated the act. At the risk of speaking for the others, I think we've got the background. All right. Which is not helpful to Mr. Preston, is it? On appeal, yes, sir. I think when you hear it on appeal, we have two orders. You have that background also. Judge Hunt entered an order on 10-27-15, granting the dismissal. And again, another order denying the motion for reconsideration. Let me just ask you this, maybe, so we can kind of jump into the issues. Do you deny that at least in these tolling agreements, you purported to waive all of your time-based defenses? I mean, the language is pretty broad. Will not assert in any manner the defense of statute of limitations, the doctrine of waiver, latches, estoppel, or any other matter constituting an avoidance of the Secretary's claims that is based on the time within which the Secretary commenced such action? Not to be too persnickety, it did not mention the statute of repose. It just mentioned limitations. Yeah. Constituting an avoidance of the Secretary's claims that is based on the time within which the Secretary commenced such action. There were four such agreements that were entered. And you, do you deny that you entered those agreements willingly, voluntarily, knowingly? No, sir. You were duped? No, I said I do not deny that. Oh, so, okay, good. So, and then when you signed the tolling agreements, did you know then, without divulging any client confidences, of course, but did you know then that you would later argue that those agreements were unenforceable? I was not representing the client until recently, so I do not know what his attorney at that time told him, and he has not divulged that to me. And in, I mean, in retrospect, do you think that renders the agreements illusory at the time they were entered into? No, sir. I think that the statute of repose is an absolute bar to the commencement of this action unless you can show a statutory exception, which in this case is fraud or concealment. But I guess what I'm asking is that if that's true now, that was true then, and if you entered into the agreement knowing that the agreement couldn't even be expressly waived, you were waiving something that you couldn't waive, what was the other side, what was the department getting out of that agreement? I have no idea what they were getting. They weren't getting anything if they waited more than six years, because the law does not allow them to commence an action after six years unless there has been fraud or failure to, you know, concealment. Could the Secretary sue Preston for breach of contract? No, sir. The contract is invalid. If you look at the mid, there's a public interest here of encouraging the Secretary to act diligently and to do its job and not to keep putting this off, and the contract is invalid. There's a, I think the case is called Mid-State Horticulture, which is 320 U.S. 356, where the Supreme Court, it's an old case, 1943, was still good law, where the Supreme Court said that an agreement that extended the time element was invalid. So the Secretary would be charged with the knowledge that that's an invalid attempt to extend the time it has to commence an action. What do we do with that Bullington case? You know which one I'm talking about, right? Tell me. I think everybody. He's been relying on Pew primarily. The statute of repose. And supplemental. Oh, the Georgia case? Yeah, the Georgia. That was a Georgia, that was a diversity case. Okay. It was applying Georgia law. But it was statute of repose, the FESS. And it was equitable estoppel, right? And by the 11th Circuit. Right. But equitable estoppel, the Supreme Court just, this year maybe, has said that equitable estoppel cannot be used to extend the statute of repose. That's the ANZ securities case. So that is inconsistent with the 11th Circuit. I think that that case absolutely says the statute of repose cannot be extended by any estoppel or equitable doctrine. It's ANZ securities. I've got to. No, no, we have that one. Okay. That's, it was California Pension CalPERS. But that doesn't quite get you where you need to go, right? Because it's one thing to say that a statute of repose can't be told through some sort of, you know, sort of equitable doctrine in the air. But it's different to say that it can't even be expressly waived. What do you say to your opponent's argument that even constitutional rights are waivable? Immunity under the 11th Amendment is waivable. Qualified immunity is waivable. All of these are rights personal to the defendant. Isn't a statute of repose simply a right personal to the defendant that could be waived? I think it is in the, it is actually affected with a public interest that Congress has determined that any suit for a violation of ERISA should be commenced no later than six years. And that cannot be waived or extended by agreement. It's really a charge to the government to diligently pursue these claims and to protect the retirement system. And in their brief, they say they've got hundreds of these cases where they have not diligently acted. They have not pursued these claims. And they routinely ask for these extensions. And they cannot do that because the statute's infected with a public interest. It just seems, it just seems like an odd situation to be in to me. That, for instance, the 11th Amendment, you know, the Supreme Court has been very, very, very clear that the 11th Amendment is a right fundamental to state sovereignty and so on and so forth. And yet, with the appropriate, you know, sort of protections in place, it can be waived. The Fifth Amendment is a fundamental to the protection of criminal defendants. And yet, with the appropriate protections in place, it can be waived. But waiving this would be contrary to the intent and purpose of the statute of ERISA, which is an absolute bar on commencement of an action more than six years after the act occurred. It's a congressional determination that has been upheld by many courts. The cases are cited in the briefs that there is a absolute statute of repose except for a case of fraud or concealment. Now, if it is said except for fraud, concealment or an express agreement extending it, that'd be a different case. But here they've determined, no, it's the only way it's extended is by fraud or concealment. If we apply PEW, could you still win? Yes, sir, because if you look at what Judge Hunt said in his opinion, that there have been many cases which have created the presumption that that's what Congress intended, an absolute bar on the statute of repose. I think this case is consistent with PEW, and so did Judge Hunt in his ruling on the motion for reconsideration. I don't understand how it's consistent with PEW. If we say in PEW, it doesn't matter whether or not it's a statute of repose or a statute of limitations. We look to see whether or not the limitation provision is jurisdictional. That's what PEW says, right? Yes, sir. So we would have to pretty much just ignore our precedent in PEW. No, sir, because there have been so many cases saying that it is an absolute bar and Congress has left the bar in place. As Judge Hunt said, you now presume, you flip the presumption that it can't be waived to it can be waived. And that's what Judge Hunt said in his ruling, and that should be affirmed. That is not inconsistent with PEW. Why shouldn't we assume your opponent cites a number of cases from state Supreme Courts, not binding on us, but state Supreme Courts, I think from North Carolina, Colorado, Tennessee, Texas, Mississippi, courts holding that under those states' common law, there's this tradition that statutes of repose are subject to express waiver. Why shouldn't we assume that Congress embodied that background notion when it wrote this statute? Well, as you said, statute of repose are relatively new. There haven't been that many state statutes where that's been addressed. And the only case I'm familiar in this circuit is, let's see, no, it's not in this circuit, it's in the Fifth Circuit, the Mississippi case called Brewster, where the court held, yes, there is a bar and it cannot be waived by express agreement. If we find that we can apply equitable tolling, is there anything in the record that we can consider about the equity argument? No, sir. I think the Supreme Court has made it clear that you cannot apply any equitable tolling. Let's say we could. Is there anything in the record about any of the employees seeking to recover? Is there any suit, anything like that? This is on a motion to dismiss. The record is scant. The legislative history is almost non-existent. You have to look at what you have. There have been a couple of statements made, maybe in the application for the interlocutory appeal. But other than that, the record is not available to prove that one way or the other. But again, it has been made clear by the Supreme Court, and it just was fortuitous for Mr. Preston that this case just came out, that equitable tolling is not available. It's prohibited to extend the statute of repose in this case, ERISA. So if we find that it's a statute of repose, you win, period. Yes, sir. It's as simple as that.  And the only exceptions granted by Congress are fraud or concealment. And that has not been alleged. So it's an absolute bar. You cannot use equity to say, well, this isn't fair. He ought to be stopped because there was an agreement or anything of that nature. And it's a bar. So that means pews should be reversed. I don't know that you have to go that far. I've said I don't think it's inconsistent with pew. We couldn't reverse pew anyway, right? One panel can't reverse another panel. I don't think so. No, we can't do that. But I'm still trying to figure out how pew doesn't matter in this case. If Judge, I think it's Judge Schoflat makes it clear that it doesn't matter whether it's a statute of limitations or a statute of repose, that we look to determine whether or not the statute is jurisdictional. That seems to be the holding in that case. He also said you could use equitable tolling. And we now know you can't. He's in that case. He also, in that case, recognized that if the Congress, if it was interpreted one way and it continued that way, that that showed the congressional intent. In other words, there was a presumption. And the presumption flips in this case. So, pew has been overruled? Distinguished. It's been overruled partially, but by the equitable ruling that you cannot use any kind of equitable remedy. The reason it's distinguishable is because of the label statute of limitations versus statute of repose or because of bankruptcy or what? Because it is a statute of repose. It's been conceded by the government and on its face of it, it's a statute of repose. And pew was a statute of limitations? Yes, sir. And Wahlberger made it clear about, I'm sure you've read that case. The Wahlberger case, the other Supreme Court case, which we think is controlling in that Mid-South case are all controlling in this situation. But so, but Wahlberger, again, is really, and maybe I'm hung up on this and no one else is, but Wahlberger is really just about equitable tolling and not about express waiver, right? That's right. And so as to Mid-State, go ahead, please. No, you go ahead, I'm sorry. Well, so if you had something about Wahlberger, I don't want to cut you off. No, that's OK. So on Mid-State, I've read Mid-State. Mid-State seems like a holding sort of bound up in the particulars of that statute, the Interstate Commerce Act or whatever it was. The Interstate Commerce Act and whether it was a limitation on filing suit within so many days and months, I think it was 90 days. Yeah. And the Court said it would fatally frustrate that statute. The Court said you can't do that. That frustrates the whole purpose, which is what we're arguing here, that they could put this off forever if they want to. And it's not protecting the retirement, private retirement system of this country. They need to do their job and act with diligence and not relieve themselves of that obligation by going to the people involved and saying, oh, here's another extension, here's another extension. Of course, there would be another. This has been going on since 2004. There's another side to the policy underlying ERISA, right? Not just do your job, but prevent fiduciaries from engaging in self-dealing transactions. Right. And bring it to a head. Do something. Don't just keep going to the fiduciary, sign another extension, sign another extension, do nothing for three, four, five years, sign another extension. Well, that's not really fair to the government, though, is it? It's not like they're doing nothing. They might have a thousand other of these investigations taking place around the country.  There's a lot of resources to do it, but it seems unfair to say they're just doing, make you sign a waiver and do nothing. Right. Well, I don't want to be unfair to anybody. I'm just telling you what I see. All right. Okay. I understand. Thank you very much. Thank you. Mr. Flint, we'll hear from Mr. Silverman. Thank you, Your Honor. A few points. Concerning the issue of whether a statute of oppose may be subject to waiver, the Court should look to the Supreme Court's Musatio decision from last year, in which the Court held that a statutory federal, the general federal limitation period that reads like a statute of oppose that is pinned on five years from the last culpable act, was subject to waiver. And that it made that decision under a jurisdictional analysis. So, that takes me to our second point, which Judge Newsom alluded to, that ANZ and CTS speak about equitable tolling. And so, they don't say anything about the ability to waive a statute of oppose. So, there is a difference between an express waiver from tolling? What's the difference between an express waiver? Is there a difference? Well, tolling principle, I mean, the word tolling, as used in those cases, is referencing, I mean, tolling principle. I suppose it depends on what you're talking about. Let's look at Wahlberger, right? You tell me this quote that I got from Wahlberger, which states that, quote, one central distinction between statutes of limitations and statutes of oppose, and there's more language, is that statutes of limitation are subject to equitable tolling. So, it seems like the opposite, if that's true, and then a statute of repose is not subject to equitable tolling. True? If they're saying that's a distinction, what do we do with Wahlberger? I mean, Your Honor, I agree that Wahlberger strongly indicates that equitable tolling is likely not available for statutes of oppose. They don't say it's likely not available. They say that's one central distinction between the two categories. See, I'm trying to find out, what do I do? I like to put things in a label. Statute of repose, this is what we do. Statute of limitations, this is what we do. You're telling us, and you may be right, it doesn't make any difference. Don't even worry about the label because it doesn't matter. We're looking at jurisdictional applied PUE. Even if we apply PUE, you can have equitable tolling or waivers. If there are some reasons, they'll get congressional intent. So how do we do this? Give me the steps. Well, I mean, just to be clear, equitable tolling is not an issue in this case. This case is about express waiver. It's just waiver. Right. So we don't even deal with Wahlberger? Well, it's not necessary to address, you know, whether Section 413.1 is subject to equitable tolling. But I would say that A and Z, and actually, because CTS is a preemption case, and what's interesting about CTS is that in order to reach its conclusion regarding the North Carolina Statute of Opposed, it looked to Supreme Court, it looked to decisions from the North Carolina Supreme Court, as well as the statute, to say that it's likely contrary to the intent of the state to allow equitable tolling in that context. What is interesting is that the North Carolina Supreme Court in the Christie decision said that the same statutes would be subject to an express agreement to extend the limitation period. So there's obviously, I mean, it begs the question if CTS would reach a different result if it turned on express agreement versus equitable tolling. So the doctrines are very different. The only reason I was hesitating, Judge Marino, on the equitable tolling as the statute should propose is because A and Z indicates that the courts are still going to look to congressional intent to determine what sorts of equitable doctrines may apply. So Irwin is still good law. Irwin says that statute's limitations are presumptively subject to equitable tolling. And in order to rebut that presumption, the Supreme Court will look to congressional intent as it did in A and Z in addressing the securities provision in that case. And it said, looking to the text, the context, the purpose, the character of that statute, that no, it's not subject to equitable tolling. And it was strong language indicating that equitable tolling would not be available. But your point fundamentally is that, guys, you don't need to worry about equitable tolling. This isn't an equitable tolling case. And then in the nature of things, there's something different between equitable tolling, which sort of happens through inaction, so to speak, in an express waiver where somebody marches in and says, yeah, I'll sign on the dotted line, I'm waiving my rights. Absolutely. Got it. And the last point I'd like to make, Your Honor, is that the idea that the fraud or concealment exceptions should be construed to limit the six-year provision, that interpretation has been rejected by the Supreme Court with respect to the Copyright Act in the Reed L. Sevier case and the AUDPA with respect to Holland v. Florida, where it said that these exceptions are not read as a limiting principle, but rather as indications of their expansiveness. Thank you, Your Honor. All right. Thank you, counsel.